CHARLES M. HILL, SR., Secretary, Department of Local Affairs Development
You ask my opinion on three questions regarding the workmen's compensation benefits provisions contained in sec. 22.16, Stats. The questions involve the situation where a disaster training exercise is being conducted in more than one county, rather than being confined within the boundaries of a single county.
A preliminary issue that should be discussed here is whether a disaster training exercise is covered employment for workmen's compensation purposes. In 46 OAG 298, 299 (1957), the Attorney General was of the opinion that training activities were covered employment for workmen's compensation purposes under the *Page 218 
then-existing civil defense statutes of this state. I am of that same opinion because of sec. 22.16 (9) (d), Stats., which now provides in part as follows:
". . . Any employment which is part of an emergency government program including but not restricted because of enumeration, test runs and other activities which have a training objective . . . and which grows out of, and is incidental to, such emergency government activity is covered employment."
I.
Your first question is:
"1. Can a county be held liable for a just claim when it is other than the county in which the claimant is duly registered for a civil defense activity?"
Upon examining see. 22.16 (9) (d), Stats., in its entirety, I conclude that the answer to this question is no. The basic scheme of that statute is to attach both employes and volunteer workers to specific emergency government units for purposes of workmen's compensation benefits.
"(d) Employes of municipal and county emergency government units are employes of the municipality or county to which the unit is attached for purposes of workmen's compensation benefits. . . . Volunteer emergency government workers are employes of the emergency government unit with whom duly registered in writing for purposes of workmen's compensation benefits. . . ."
The multi-county disaster training exercise that you envision is controlled by the following portion of sec. 22.16 (9)(d), Stats:
". . . An emergency government employee or volunteer who engages in emergency government activities upon order of any echelon in the emergency government organization other than that which carries his workmen's compensation coverage shall be eligible for the same benefits as though employed by the governmental unit employing him. . . ."
I construe this language to mean that a person remains the employe of his or her initial emergency government unit for the duration of an emergency government activity. For example, *Page 219 
assume that a volunteer worker registers in writing with Vernon County to participate in a disaster training exercise as an ambulance driver. If this volunteer worker was duly ordered to drive the ambulance into Richland County by the area emergency government head and subsequently sustained an injury in Richland County, he or she would then be eligible for workmen's compensation benefits from Vernon County, the initial employer.
I am aware that sec. 22.16 (9) (d), Stats., also contains the following provision:
". . . Members of an emergency government unit who are not acting as employes of a private employer during emergency government activities are employes of the emergency government unit for which acting. . . ."
It could be argued under this language that in the hypothetical situation above the volunteer worker would be acting for Richland County and would therefore be Richland County's employe. I feel that such interpretation must be rejected under the rule that a statute should be construed to give effect to its leading idea and the whole brought into harmony therewith if reasonably practicable. Pella Farmers Mut. Ins. Co. v. Hartland RichmondTown Ins. Co. (1965), 26 Wis.2d 29, 41, 132 N.W.2d 225. It is my opinion that the leading idea of sec. 22.16 (9) (d), Stats., is to fix a person as the employe of his or her initial emergency government unit for the duration of an emergency government activity. This interpretation gives a needed certainty to the pre-planning of such disaster training exercises in that employes are readily identifiable for the purpose of securing workmen's compensation insurance. Further, since the employment relationship is based on contract, the employe who works temporarily for a special employer does not become the employe of the borrower without specific consent of the employe to accept the new master in place of the old. See 1 A Larson, Workmen'sCompensation Law, § 48.10, p. 806 and Hanz v. IndustrialComm. (1959), 7 Wis.2d 314, 318, 319, 96 N.W.2d 533. As you know, under a Wisconsin workmen's compensation insurance policy, each employe constitutes a separate risk. Sec. 102.31 (2), Stats. *Page 220 
II.
Your second question is:
"2. Does such a claim carry the same Workmen's Compensation benefits for that (secondary) county for amounts payable in excess of $1.00 per capita as for claims arising from a single county civil defense activity?"
Section 22.16 (9) (f), Stats., provides:
"(f) If the total liability for workmen's compensation benefits under par. (d), indemnification under par. (e) and loss from destruction of equipment under sub. (10), incurred in any calendar year exceeds $1 per capita of the sponsor's population, the state shall reimburse the sponsor for the excess. Payment shall be made from the appropriation in s. 20.545 (1) (a) on certificate of the secretary."
In view of my answer to your first question, I feel that the best way to respond to this question is by way of a general consideration of this statute. This provision creates a secondary liability on the part of the state to reimburse for losses above a certain ceiling. For example, a sponsor with a population of 20,000 people would have to absorb $20,000 worth of total liability in one calendar year. When its total liability for that year exceeds $20,000, the state then must reimburse the sponsor for the excess.
Where the sponsor insures its liability for payment of workmen's compensation, the state would not be required to indemnify unless in any calendar year the insurance premium payable for coverage during that year, plus tort liability to third persons and equipment damage together exceed $1 per capita of the sponsor's population.
The joint or combined operations of counties, towns and municipalities under the cooperation provisions of sec. 22.16 (8), Stats., may create joint liability for workmen's compensation benefits. See Insurance Co. of N.A. v. ILHRDepartment (1970), 45 Wis.2d 361, 367, 173 N.W.2d 192. Responsibility for reimbursement of such sponsor, of course, would be measured by the population of the combined unit.
III.
Your third question is: *Page 221 
"3. Can the same liability responsibility be applied if the activity is conducted jointly by cities?"
Since sec. 22.16, Stats., refers throughout to counties, towns and municipalities, the answer to this question is yes. The statute clearly contemplates that cities will be carrying out emergency government activities. The word "municipality" includes cities and villages. Sec. 990.01 (22), Stats.
In conclusion, by way of a caveat, I repeat what the Attorney General stated in 46 OAG 298, supra at 299:
"It should be noted, not only in connection with this question but also with the following ones, that the answers are given on a generalized basis. There is wide room for variance of circumstances in individual cases which might affect the answers in such cases. Workmen's compensation is enforceable in disputed cases by procedure before the industrial commission. That commission has a considerable leeway for fact-finding. For example, the commission's findings whether an injury occurred in the course of employment, so as to be compensable, are generally held to be conclusive where there is room for a difference of opinion."
RWW:SS